RECEIVED

AUG 0 8 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
MONROE LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| H&H, LLC | CIVIL A. NO. 04-977 |
|---|---|
| VERSUS | JUDGE ROBERT G. JAMES |
| CWI-WHITE OAKS LANDFILL, LLC | MAG. JUDGE JAMES D. KIRK |

## RULING

Pending before the Court are a Motion for New Trial [Doc. No. 43], filed by Plaintiff H&H, L.L.C. ("H&H"), and an Alternative Motion for New Trial [Doc. No. 47], filed by Defendant CWI-White Oaks Landfill, L.L.C. ("CWI"). Both motions have been opposed, and both parties have filed reply briefs to the respective oppositions. For the following reasons, H&H's Motion for New Trial [Doc. No. 43] and CWI's Alternative Motion for New Trial [Doc. No. 47] are both DENIED.

### I. FACTS AND PROCEDURAL HISTORY

This case involves a contractual dispute over the terms and obligations of a royalty agreement entered into between H&H and CWI in 1999.

On February 2, 1999, H&H, CWI, and a third party, Littleton Enterprises, Inc., executed a "Permit Purchase and Sale Agreement" regarding the sale of a Type III landfill permit that had been issued by the Louisiana Department of Environmental Quality ("LDEQ") to Littleton for the White Oaks Landfill ("the landfill") located in Monroe, Ouachita Parish, Louisiana.

On this same date, H&H and CWI executed a "Purchase and Sale Agreement" regarding the sale of approximately 105 acres of property owned by H&H in Ouachita Parish, upon which the landfill was located.

On May 3, 1999, H&H sold the 105 acres to CWI as per the terms of the Purchase and Sale Agreement.

1

On this same date, H&H, CWI, and Littleton executed a "Royalty Agreement" incorporating the terms and provisions of the Purchase and Sale Agreement.

In August, 2003, CWI began receiving and disposing of Type I and Type II solid waste in the landfill.

On April 20, 2004, H&H brought suit in Louisiana state court, and on April 29, 2004, CWI removed the case to this Court.

At trial, H&H alleged that CWI had not paid H&H the 5% royalty due on money that CWI had collected since August, 2003, for the receipt and disposal of Type I and Type II solid waste. H&H also alleged that CWI had failed to pay the 5% royalty on some of the Type III waste which has been disposed of at the landfill.

CWI responded that, under the Royalty Agreement, H&H was entitled to the 5% royalty only as to Type III waste and was not entitled to any royalty for Type I or Type II waste. CWI also contended that it had paid all royalties owed for the Type III waste and was not delinquent on any payments owed under the Royalty Agreement. CWI additionally argued that its obligation to make royalty payments under the Royalty Agreement continued only until it had collected and deposited the amount of waste that would have consumed the "useful life" of the landfill as it existed on February 2, 1999 and/or May 3, 1999, the dates Royalty Agreement and related documents were executed.

The case was tried before a jury on May 9-11, 2005, in Monroe, Louisiana. Neither party objected to the jury instructions or the jury interrogatories. On May 11, 2005, the jury answered interrogatories and found by a preponderance of the evidence that, under the provisions of the contracts entered into by the parties, H&H was entitled to be paid a 5% royalty on money collected by CWI for "Type III waste only." In separate interrogatories, the jury also found by a preponderance of the evidence that such royalties were to be paid for Type III waste "deposited

anywhere on the 105 acres sold by Plaintiff to Defendant" and that H&H was entitled to be paid such royalties "as long as there are any landfill operations on the property to which Plaintiff is to be entitled a royalty." On June 2, 2005, the Court entered Judgment reflecting the jury's verdict.

On May 20, 2005, subsequent to the jury's verdict but prior to the entry of Judgment, H&H filed a Motion for New Trial. H&H seeks a new trial based solely on the issue contained in the jury's answer to the first interrogatory, that H&H was entitled to 5% royalties on Type III waste only. H&H argues that the jury's verdict on this issue "is (a) not supported by any evidence in the record and is contrary to the clear and unambiguous language of the contract, and (b) alternatively, is at the very least against the great weight of the evidence on this issue."

On June 2, 2005, CWI filed a Memorandum in Opposition to H&H's Motion for New Trial. On this same date CWI also filed an Alternative Motion for New Trial, arguing that, "if it were proper to grant a new trial, which is not the case, then the only appropriate course would be to grant a new trial on all issues."

On June 17, 2005, H&H filed a Reply Brief to CWI's Opposition to H&H's New Trial Motion and Opposition to CWI's New Trial Motion.

On July 1, 2005, CWI filed a Reply to H&H's opposition.

With full briefing by all parties now completed, the Court is prepared to rule on the pending Motion for New Trial and Alternative Motion for New Trial.

## II. LAW AND ANALYSIS

### A. Standard of Review for Motions for New Trial

Rule 59 of the Federal Rules of Civil Procedure provides, in relevant part: "A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The Fifth Circuit has held

that Rule 59 "allows a trial court to grant a new trial based on its assessment of the fairness of the trial and the reliability of the jury's verdict." *Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). Although Rule 59 does not specify or limit the grounds necessary to support such a decision, the Fifth Circuit has noted that a "new trial may be granted if the trial court finds that "the verdict is against the weight of evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed." *Id*; *see also* 11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2805 (2d ed. 1995).

"Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999). In granting a new trial, the district court weighs all the evidence, and it need not view it in the light most favorable to the nonmoving party. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). "A new trial is warranted if the [verdict] is against the great, and not merely the greater, weight of the evidence." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). "The authority to grant a new trial, moreover, is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). The district court "abuses its discretion by denying a new trial only when there is an 'absolute absence of evidence to support the jury's verdict.'" *Seidman*, 923 F.2d at 1140 (5th Cir. 1991) (internal citations omitted).

The Court finds that the jury's verdict was supported by sufficient evidence in the record and that the verdict was fair, reliable, and did not result in a miscarriage of justice.

### B. H&H's Motion for New Trial

H&H first argues that the jury's verdict that H&H is entitled to royalties only on Type III waste, rather than on all solid waste accepted in the landfill, "is contrary to all of the evidence the

4

jury should have considered on this issue in light of the court's jury instructions." H&H asserts that the contract at issue "explicitly and unambiguously states that the royalty is to be paid on all of the 'solid waste' defined in the agreement," and that, in turn, "solid waste" is clearly defined both in the contract and by the LDEQ regulations to include Type I, Type II, and Type III waste. Additionally, H&H argues that a merger clause within the contract should prevent any reference to parol evidence. In sum, H&H contends that the intent of the parties was reasonably certain from the face of the contract itself and, under the relevant rules of contract interpretation, the jury's finding was not supported by any evidence in the record. Alternatively, H&H argues that, even if the contract was ambiguous, the jury's verdict is contrary to the great weight of the evidence.

The Court is unable to conclude that the jury's verdict was contrary to all evidence presented, as H&H contends, or that the verdict was even against the great weight of the evidence. First, the Court is not persuaded that the intent of the parties and their obligations under the contract were clear, precise, and unambiguous as H&H claims. For example, the jury was entitled to determine that "solid waste" was an imprecise term derived from a standard form contract and that its generic definition did not control the intent of the parties in entering into the contract. Such a reading is clearly supported by the fact that the standardized definition of "solid waste" used in the contract and asserted by H&H does not encompass "woodwaste," "yard trash," or "construction and demolition debris," all categories of waste admittedly intended by both parties to be subject to the royalty agreement.

Additionally, H&H's own trial tactics belie its purported conclusion that the contractual terms were clear and unambiguous and that the contract's merger clause should prohibit the introduction of any parol evidence to determine the parties' intent. For example, H&H was the first to introduce extrinsic evidence, in the form of a memorandum from Michael Harrelson to Steve Villavaso, relating to the parties' intent on the royalty issue. H&H repeatedly referenced this

memorandum, both during questioning of witnesses and in its closing, in an attempt to define the terms of the royalty obligations under the contract. Likewise, H&H called several witnesses to testify about their opinions of what the parties intended regarding the types of waste upon which royalties were owed under the contract. Having departed from the four corners of the contract in an attempt to define contractual terms to its own advantage, H&H cannot now be heard to argue that the contract was so precise and unambiguous that the jury erred in considering any such parol evidence.

The Court finds that, because the terms of the contract were not clear, precise, and unambiguous, the jury was entitled to interpret the parties' intent by parol evidence. Accordingly, the Court concludes that H&H's contention that the jury's verdict was not supported by any evidence in the record and is contrary to the clear language of the contract is without merit.

H&H presents three arguments in support of its alternative argument that, even if the contract was ambiguous, the jury's answer to the first interrogatory was against the clear weight of the evidence on the issue. First H&H argues that "[i]f only Type III waste would have been agreed to by the parties, then the contract would have so stated and would have so limited the description of solid waste." Second, H&H argues that "[t]he only evidence presented to the jury that only Type III waste was intended was the testimony of Steven Witmer," which testimony was "so insubstantial as to be ephemeral." And third, H&H argues that "[a]ll other witnesses who participated in the negotiations, namely, Michael Harrison, Steven Villavaso and Rebecca Harrod," testified that "the royalty was to be paid just as the contract stated, i.e., on all solid waste including Types I, II and III waste."

The Court is not persuaded that the jury's verdict was against the weight of the evidence. First, as discussed above, the terminology in the contract is ambiguous and is not dispositive of the parties' intent. The fact that the contract does not explicitly restrict royalties to Type III waste only

6

is no more indicative of the parties' intent than the fact that the contract fails to positively state that the royalties will be paid on Types I, II, and III waste. H&H's argument on this issue, therefore, adds nothing to their assertion that the jury's verdict was contrary to the weight of the evidence.

Second, the fact that there were more witnesses who testified in support of H&H's interpretation of the contract than who testified on behalf of CWI does not give rise to an inference that the jury lost its way or that its verdict was against the weight of the evidence. As the Fifth Circuit's approved pattern jury instructions clearly state, "[t]he testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness." The jury is specifically instructed "not to reach a conclusion on a particular point just because there were more witnesses for one side on that point," and is entitled to accord any witness with whatever degree of credibility and significance it finds appropriate. Additionally, H&H has presented no persuasive evidence that the testimony of CWI's witness was any less substantial or credible than that of its own witnesses who participated in the contract negotiations.

Considering all the testimony and evidence adduced at trial, the Court cannot say that the jury's verdict is against the great weight of the evidence or resulted in a miscarriage of justice. As such, H&H's Motion for New Trial is DENIED.

### C.  CWI's Alternative Motion for New Trial

CWI asserts in its Alternative Motion for New Trial that the three issues submitted to the jury are all components of a single contractual obligation, and thus it would be improper for the Court to grant a new trial as to the jury's verdict on the first interrogatory only. CWI argues that the jury's verdict was amply supported by the evidence and should not be disturbed, but that if a new trial is granted as to the first interrogatory issue, a new trial should be granted on all related issues.

Having determined that H&H is not entitled to a new trial on the issue contained in the first

7

interrogatory, the Court finds CWI's arguments as to the severability of the interrogatory issues under the royalty agreement to be moot. Therefore, CWI's Alternative Motion for New Trial is also DENIED.

## III. CONCLUSION

For the foregoing reasons, the H&H's Motion for New Trial [Doc. No. 43] and CWI's Alternative Motion for New Trial [Doc. No. 47] are both DENIED.

MONROE, LOUISIANA, this 8 day of August, 2005.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE